Citation Nr: 1518733 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 09-03 344 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to service connection for "joint disease" claimed as due to an undiagnosed illness.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

P. M. Johnson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 31, 1969 to July 31, 1970. The Veteran also had periods of active service from October 27, 1972 to January 9, 1973; November 25, 1976, to July 2, 1977; February 20, 1978, to July 8, 1978; April 27, 1981 to August 24, 1981; August 28, 1981 to September 30, 1981; January 1, 1982 to March 31, 1982; April 2, 1982, to August 18, 1982; October 2, 1982 to February 17, 1983; February 19, 1983 to July 7, 1983; October 3, 1983 to February 18, 1984; February 29, 1984 to July 6, 1984; and December 8, 1990 to May 20, 1991, which included service in Saudi Arabia from January 7, 1991 to April 1, 1991 as part of Operation Desert Shield/Storm. The Veteran also had periods of active duty for training extending from July 27 to August 10, 1985; July 5 to July 19, 1986; March 5 to March 21, 1987; June 11 to June 25, 1988; and July 22 to August 5, 1989.

This case originally came before the Board of Veterans' Appeals (Board) on appeal of a November 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio, as well as July 2008 and August 2011 rating decisions by the VARO in Indianapolis, Indiana. 

In a decision of December 2012, the Board, in pertinent part, denied entitlement to service connection for "joint disease." 

In a December 2013 Order, the United States Court of Appeals for Veterans Claims (Court) remanded the Board's December 2012 decision for action consistent with a Joint Motion for Partial Remand dated that same month. In March 2014 and October 2014, the Board remanded the claim for further development. As the directed development has been completed, and because the Board's order was fully complied with, there is no prejudice for the Board to proceed. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. The Veteran had active service in the Southwest Asia Theater of operations during the Persian Gulf War. 

2. The Veteran has reported credible complaints of pain in his hands, elbows, shoulders, knees and hips, which manifested shortly after he returned from active service in Southwest Asia, is not attributable to a known clinical diagnosis, has existed for more than six months, and is causally related to his active service.

3. Upon lifting approximately 30 pounds or greater, the Veteran's condition causes flare-ups that result in stiffness and reduced strength in his joints. 


CONCLUSION OF LAW

The criteria for entitlement to service connection for an undiagnosed illness, manifested as pain in his hands, elbows, shoulders, knees and hips, have been met. 38 U.S.C.A. §§ 1110, 1131, 1117, 5107(b) (2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.317, 4.3, 4.40, 4.45, 4.59, (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran's Claims Assistance Act of 2000 (VCAA)

The Veteran's claim of entitlement to service connection for a joint disability has been granted. As such, the Board finds that any error related to the VCAA on this claim is moot. See 38 U.S.C. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2014); Mayfield v. Nicholson, 19 Vet. App. 103, (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Service Connection for a Joint Condition

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303, 3.304 (2014). To establish a right to compensation, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may also be established on a presumptive basis for a Persian Gulf veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2016, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.A. § 1117 (West 2014); 38 C.F.R. § 3.317(a)(1). 

A Persian Gulf veteran is one who served in the Southwest Asia Theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317(e). The Southwest Asia Theater of operations includes Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(e)(2). 

In this case, the Veteran's service personnel records confirm his service during the Persian Gulf War in the Southwest Asia Theater of operations. Accordingly, the Board finds the Veteran is a Persian Gulf veteran and the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 may apply if the Veteran is found to have a qualifying chronic disability. 

The term "qualifying chronic disability" means a chronic disability resulting from an undiagnosed illness or a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms, such as chronic fatigue syndrome; fibromyalgia, or functional gastrointestinal disorders (including, but not limited to, irritable bowel syndrome, functional dyspepsia, functional vomiting, functional constipation, functional bloating, functional abdominal pain syndrome, and functional dysphagia). 38 C.F.R. § 3.317(a)(2)(i). 

For purposes of this presumption, the term "medically unexplained chronic multisymptom illness" means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(ii). 

VA regulations clarify that "objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3). Additionally, disabilities that have existed for 6 months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a 6-month period will be considered chronic. The 6-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4). 

Signs or symptoms which may be manifestations of an undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to, fatigue, signs or symptoms involving skin, headaches, muscle pain, joint pain, neurological signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the respiratory system (upper or lower), sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, or menstrual disorders. 38 C.F.R. § 3.317(b). 

In claims based on undiagnosed illness, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004).
Laypersons, such as the Veteran, are competent to report objective signs of illness such as pain or fatigue. Id at 9-10. To determine whether a qualifying chronic disability is manifested to a degree of 10 percent or more, the rating criteria set forth in the VA Schedule for Rating Disabilities shall be utilized. See 38 C.F.R. § 3.317(a)(5); 38 C.F.R. Part 4 (2014). 

Even where service connection cannot be presumed, service connection may still be established on a direct basis. See Stefl v. Nicholson, 21 Vet. App. 120 (2007); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107 (West 2014). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran claims entitlement to service connection for joint problems that he relates to his service in the Persian Gulf. In May 2006, the Veteran submitted an application for service connection, which stated that he had symptoms of numbness and tingling in his upper and lower extremities and burning pain in his joints. 

In September 2008, the Veteran had a VA examination regarding his joint pain. He reported that his shoulders, elbows, and hands ache and that this pain began shortly after he came home from Desert Storm. He stated that typically it is a dull ache, but if he lifts something he develops a burning sensation in his joints. He stated that the symptoms were worse early on, but that they have "lessened over the years." He reported that he takes no pain medication or seek treatment for this condition. On examination, the shoulder, elbow, and hands did not demonstrate swelling, warmth, or tenderness. There was no deformity, effusion, or crepitus. Active and passive movements of these joints were reported to be normal without painful limitation and the muscles did not demonstrate signs of atrophy. The shoulders, elbows, and hands demonstrated full range of motion without limitation due to pain. The examiner did not diagnose the Veteran with a joint condition. 

In December 2008, the Veteran sought treatment at the Chicago VAMC. He reported a history of recurrent joint pain since his service in Operation Desert Storm. While the examiner noted that the Veteran had a history of prior gunshot wounds, he did not diagnose the Veteran with any current disability to his joints. 

In May 2014, the Veteran underwent another VA examination regarding his joint pain. The examiner opined that the Veteran did not suffer from a current disability, despite the Veteran's current reports of joint pain. The examiner opined that the Veteran's pain was the result of physical activity in his civilian life and deterioration of joints with age. 

The Veteran submitted a statement that disagreed with the examiner's findings. He reported that his joint pain began shortly after he returned from the Gulf War in 1991 when he was 40 years old and that he had been involved in the police force for less than 10 years at that time. He also reported that his career as a homicide detective included less extended periods of walking than a typical police officer. 

In January 2015, the Veteran underwent another VA examination. The examiner noted that the Veteran reported similar symptoms to those reported during the 2008 C&P examination. The Veteran reported that after he was deployed to the Persian Gulf he developed "burning in bones" and his felt as if his bones were on fire. He reported that currently he had symptoms of pain across dorsum of his bilateral forearms, on top of his hands, his bilateral hips, and his bilateral knees. He reported that initially his flare-ups were more severe but now he manages the pain without regular treatment. The examiner opined that the Veteran did not have a current disability and that he previously had suffered strains of his elbows, knees, and hips that were not related to his active service and had resolved. 

As a lay person, the Veteran is competent to describe observable symptoms perceived through his senses, including perceiving feelings of pain in his joints and changes in severity of this pain at times of different activities. See Layno v. Brown, 6 Vet. App. 465 (1994). Moreover, the Board finds his reports of such symptomatology to be consistent and credible, thus, they constitute objective indications of a chronic disability due to an undiagnosed illness. The remaining question before the Board is whether these objective indications became manifest during active military service in the Southwest Asia Theater during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2016. 

The evidence of record indicates that the Veteran's joint pain began almost immediately after his service in the Persian Gulf. While the Veteran reported in December 2008 that his pain began during his service in the Persian Gulf, the rest of the evidence of record indicates that his joint pain began shortly after that period of service. During his VA exam in 2008 and his most recent VA examination, the Veteran reported that after his burning chest pain subsided, which is recorded in multiple service treatment records from March and April of 1991, it was replaced by burning pain in the joints of his hands, his elbows, his shoulders, knees and hips. As the evidence of record establishes, that his pain began after his service in the Persian Gulf, the evidence must demonstrate that his condition became compensable to a degree of 10 percent or more not later than December 31, 2016.

The Board finds that the Veteran's joint condition has become compensable to a degree of 10 percent or more. While the Veteran's VA examiners have not noted any functional limitations, including limitation due to pain on motion, the Board notes that these examinations have not considered the Veteran's reports of functional limitations during flare-ups of his condition. The Veteran's has reported that it hurts to lift and that lifting approximately 30 pounds or more causes stiffness, increased pain, and reduced strength. 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Thus, with or without degenerative arthritis, it is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59; see also, Burton v. Shinseki, 25 Vet. App. 1, 5 (2011). Moreover, when evaluating musculoskeletal disabilities, VA may, in addition to applying the schedular criteria, assign a higher disability rating when the evidence demonstrates functional loss due to limited or excessive movement, pain, weakness, excessive fatigability, or incoordination, to include during flare-ups and with repeated use, if those factors are not considered in the rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; see also DeLuca v. Brown, 8 Vet. App. 202 (1995); Burton, 25 Vet. App. at 5. As the evidence demonstrates that the Veteran's condition causes functional impairment of his joints (reduced strength, stiffness, and increased pain) during flare-ups, the Board finds that the Veteran's joint condition warrants at least a 10 percent disability rating. 

In sum, the Board finds that the evidence is at least in equipoise with respect to the Veteran's claims of entitlement to service connection for an undiagnosed illness manifested by pain in the joints of his hands, his elbows, his shoulders, knees and hips. The Veteran's symptoms are chronic in that they have lasted for more than six months, and they have not been clearly attributed to a known clinical diagnosis. (The Board notes that the 2015 examiner opined that the Veteran had a previous diagnosis of bilateral elbow strains, a strain of the left hip, and bilateral knee strains, however, there is no evidence of such a diagnosis anywhere else in the Veteran's claims file, and such a diagnosis was not made for his current condition despite the examiner's acknowledgement of the symptoms reported by the Veteran.) Moreover, symptoms of joint pain is among the signs or symptoms of an undiagnosed illness specifically listed in 38 C.F.R. § 3.317(b). 

Accordingly, the Veteran qualifies as a Persian Gulf veteran and has presented with chronic joint pain that is not attributable to known clinical diagnoses. While the symptomatology manifested shortly after his service in the Southwest Asia Theater of operations, the evidence indicates that it has manifested with symptoms that are at least 10 percent disabling. Therefore, resolving all doubt in favor of the Veteran, service connection for symptoms of joint pain of the hands, elbows, shoulders, knees and hips, is warranted as due to an undiagnosed illness. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.317.


ORDER

Service connection for joint pain of the hands, elbows, shoulders, knees and hips is granted. 

____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs