Citation Nr: 1518709 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 05-21 961 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to service connection for a gastrointestinal (GI) disorder, to include as due to a qualifying chronic disability under 38 C.F.R. § 3.317.

2. Entitlement to service connection for a sleep disorder, to include as due to a qualifying chronic disability under 38 C.F.R. § 3.317.

3. Entitlement to service connection for a heart condition due to exposure to mercury and sulfur.

4. Entitlement to service connection for prostate cancer.


REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

David S. Nelson, Counsel


INTRODUCTION

The Veteran had active service from September 1980 to April 1987 and from January 1991 to June 1991, including service in the Southwest Asia theater of operations in support of Operations Desert Shield/Storm.

These matters are before the Board of Veterans' Appeals (Board) on appeal from July 2004 and May 2013 rating decisions by the Department of Veterans Affairs (VA) Montgomery, Alabama, Regional Office (RO). In February 2010, the Veteran testified at a personal hearing before the undersigned. A copy of the transcript of that hearing is of record.

This case was most recently before the Board in May 2014 and was remanded for additional development. A subsequent October 2014 rating decision granted service connection for chronic obstructive pulmonary disease (COPD). The appeal as to that issue has been resolved.

The issues of entitlement to service connection for a heart condition and prostate cancer are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. A chronic gastrointestinal disability was not manifest during active service and a present disability is not shown to have developed as a result of an established event, injury, or disease during active service.

2. A sleep disability was not manifest during active service and a present disability is not shown to have developed as a result of an established event, injury, or disease during active service.


CONCLUSIONS OF LAW

1. The criteria for service connection for a gastrointestinal disability have not been met. 38 U.S.C.A. §§ 1110, 1117, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).

2. The criteria for service connection for a sleep disability have not been met. 38 U.S.C.A. §§ 1110, 1117, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.317 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties To Notify And To Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). Notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004).

By correspondence, including that dated in June 2002 and January 2009, the Veteran was informed of the evidence and information necessary to substantiate the claims, the information required of the Veteran to enable VA to obtain evidence in support of the claims, the assistance that VA would provide to obtain evidence and information in support of the claims, and the evidence that should be submitted if there was no desire for VA to obtain such evidence. In the January 2009 letter the Veteran received notice regarding the assignment of a disability rating and effective date in the event of an award of VA benefits. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). As notice was not completed prior to the initial AOJ adjudication of the claim, such notice was not compliant with Pelegrini. However, as the case was readjudicated thereafter, there is no prejudice to the Veteran in this regard. Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006). Hence, the Board finds that the duty to notify has been satisfied; and neither the Veteran nor his representative has alleged otherwise.

VA has made reasonable efforts to assist the Veteran in obtaining evidence necessary to substantiate his claims. 38 U.S.C.A. § 5103A. The information and evidence associated with the claims file consist of his service treatment records (STRs), VA medical treatment records, private post-service medical treatment records, VA examinations, and statements from the Veteran and his representative. There is no indication that there is any additional relevant evidence to be obtained by either VA or the Veteran.

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires (1) the duty to fully explain the issue(s) and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, during the Board personal hearing, it is clear from the Veteran's testimony that he understood the elements of establishing service connection for his claims in that he tried to establish how each of the condition had their onset during service. The Veteran was assisted at the hearing by an accredited representative from his service organization. The Veteran was asked questions to ascertain why he felt that each condition was related to service. The hearing focused on the elements necessary to substantiate the claim, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims for service connection. These actions fulfilled the duties in Bryant v. Shinseki, 23 Vet. App. 488 (2010), and the Veteran has not asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2) or identified any prejudice in the conduct of the hearing. As such, the Board finds that, consistent with Bryant, the Board complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board can adjudicate the claims based on the current record.

VA medical opinions obtained as to the issues addressed in this decision are adequate as they are predicated on a substantial review of the record and medical findings and consider the Veteran's complaints and symptoms. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion as to these issues has been met. 38 C.F.R. § 3.159(c)(4). The available medical evidence is sufficient for adequate determinations. There has been substantial compliance with all pertinent VA law and regulations and to adjudicate these claims would not cause any prejudice to the appellant.

The Board finds that there has been substantial compliance with its prior remand instructions. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). Consequently, VA's duty to assist the Veteran in the development of his claim has been satisfied. Significantly, as noted, the Veteran has undergone VA examinations that addressed the medical matters presented by this appeal. The Veteran has not referenced any other pertinent, obtainable evidence that remains outstanding. VA's duties to notify and assist are met, and the Board will address the merits of the claims.

Laws and regulations

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty or for aggravation of preexisting injury suffered or disease contracted in the line of duty. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Where there is a chronic disease shown as such in service or within the presumptive period under § 3.307 so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however, remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). This rule does not mean that any manifestations in service will permit service connection. To show chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time as distinguished from merely isolated findings or a diagnosis including the word "chronic." When the disease entity is established, there is no requirement of evidentiary showing of continuity. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b). However, the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection for certain specified chronic diseases may be established on a presumptive basis by showing that such disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309.

Compensation for disability due to undiagnosed illness and medically unexplained chronic multi-symptom illnesses may be paid to a Persian Gulf Veteran who exhibits objective indications of a qualifying chronic disability which became manifest either during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2016, and by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C.A. § 1117 (West 2014); 38 C.F.R. § 3.317 (as amended effective August 15, 2011).

A "qualifying chronic disability" for purposes of 38 U.S.C.A. § 1117 is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multisymptom illness such as, but not limited to, chronic fatigue syndrome, fibromyalgia, or functional gastrointestinal disorders. 38 U.S.C.A. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i)(B). Functional gastrointestinal disorders are a group of conditions characterized by chronic or recurrent symptoms that are unexplained by any structural, endoscopic, laboratory, or other objective signs of injury or disease and may be related to any part of the gastrointestinal tract. Specific functional gastrointestinal disorders include, but are not limited to, irritable bowel syndrome, functional dyspepsia, functional vomiting, functional constipation, functional bloating, functional abdominal pain syndrome, and functional dysphagia. These disorders are commonly characterized by symptoms including abdominal pain, substernal burning or pain, nausea, vomiting, altered bowel habits (including diarrhea, constipation), indigestion, bloating, postprandial fullness, and painful or difficult swallowing. Diagnosis of specific functional gastrointestinal disorders is made in accordance with established medical principles, which generally require symptom onset at least 6 months prior to diagnosis and the presence of symptoms sufficient to diagnose the specific disorder at least 3 months prior to diagnosis. 

The term medically unexplained chronic multisymptom illness means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(i)(B)(ii).

Signs or symptoms which may be manifestations of undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to: (1) Fatigue, (2) Unexplained rashes or other dermatological signs or symptoms, (3) Headache, (4) Muscle pain, (5) Joint pain, (6) Neurological signs and symptoms, (7) Neuropsychological signs or symptoms, (8) Signs or symptoms involving the upper or lower respiratory system, (9) Sleep disturbances, (10) Gastrointestinal signs or symptoms, (11) Cardiovascular signs or symptoms, (12) Abnormal weight loss, and (13) Menstrual disorders. 38 C.F.R. § 3.317(b).

Presumptive service connection may also be established for certain infectious diseases and long-term health effects associated with infectious disease. 38 C.F.R. § 3.317(c), (d). Presumptive service connection may not be established if there is affirmative evidence the disease was not incurred during a qualifying period of service, if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or event that occurred between the veteran's most recent departure from a qualifying period of service and the onset of the illness, or if there is affirmative evidence that the disease is the result of the veteran's own willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. § 3.317(c)(4). 

If signs or symptoms have been attributed to a known clinical diagnosis, service connection may not be provided under the specific provisions pertaining to Persian Gulf veterans. See VAOPGCPREC 8-98 (Aug. 3, 1998). "The very essence of an undiagnosed illness is that there is no diagnosis." Stankevich v. Nicholson, 19 Vet. App. 470, 472 (2006); see also Gutierrez v. Principi, 19 Vet. App. 1, 10 (2004) (a Persian Gulf War veteran's symptoms "cannot be related to any known clinical diagnosis for compensation to be awarded under section 1117"). 

VA is required to evaluate the supporting evidence in light of the places, types, and circumstances of service, as evidenced by service records, the official history of each organization in which the veteran served, the veteran's military records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(a) (West 2014).

Analysis

At his February 2010 Board hearing the Veteran asserted that he has a gastrointestinal disorder and sleep disorder as a result of service in Southwest Asia and his exposure to unknown substances during that time. The Veteran also contended that he had sleep disturbances and night sweats and fatigue due to an undiagnosed illness. As for his stomach problems, the Veteran noted that after eating he would experience "burning" and that he could "feel everything like wants to regurgitate back to my neck," and such would be accompanied by a burning in his esophagus in the morning. After coming back from the desert he stated he had a 50 pound weight loss.

I. Gastrointestinal disability

An August 1983 service periodic examination noted that the Veteran complained of gastrointestinal distress and gastritis in 1979. An April 1985 service treatment record noted that the Veteran complained of diarrhea and cramps in the lower abdomen. The assessment was gastroenteritis. A November 1985 service treatment record indicates that the Veteran made complaints related to diarrhea of three days duration.

The August 2014 VA examination include diagnoses of a current gastrointestinal disability, including chronic constipation and gastroesophageal reflux disease (GERD). A resolved bezoar was also noted. The examiner found, however, that:

The veteran's gastrointestinal disorders of GERD and constipation are unlikely to be related to that had its onset in service or is etiologically related to his active service, to include whether any chronic or recurrent symptoms may be attributable to undiagnosed illness, medically unexplained chronic multisymptom illnesses, infectious diseases, or the long-term health effects associated with infectious disease. 

The veteran had a few visits noted in his STRs for gastroenteritis which were self-limited life events without evidence of sequelae or chronic disease. Neither GERD nor constipation was diagnosed during service nor did the veteran have chronic symptoms diagnosable as these conditions. 

The GERD and constipation occurred well after military service without evidence of chronic GERD until the past few years and constipation which started in the 2000s. The [significant] amount of lapsed time between his military service, which included a normal gastrointestinal exam and no gastrointestinal complaints on military physical in 1993, make it unlikely that there is any etiological relationship to his military service to include his service and exposures in SWA/Persian Gulf War. 

While the veteran had intermittent visits with GI complaints between military service and the onset of his diagnosed GI conditions of constipation and then GERD, none of these symptoms prior to the diagnosis of these conditions showed a pattern consistent with relapsing [symptoms] due to an undiagnosed illness or chronic multisymptom illness. There is no evidence to support any diagnosis of undiagnosed illness nor chronic multisymptom illness in this veteran related to his gastrointestinal symptoms or diagnosed GERD and constipation. These conditions are life events which occurred well after military service and show no relationship to military service due to the extended period of time before these conditions arose. 

There is no documentation nor identification of infectious disease nor history of infectious disease to cause his current conditions of chronic constipation or GERD.

The Veteran's service treatment records do not tend to show that the Veteran's GERD or constipation had its onset during service. While service treatment records indicate that the Veteran did have some gastrointestinal complaints, the August 2014 VA examiner specifically noted and addressed the records and stated that the in-service complaints we not related to chronic gastrointestinal disability. 

As for post-service medical evidence, the private and VA records do not show or contain any evidence suggesting a relationship between gastrointestinal disability and the Veteran's service. Further, the August 2014 VA physician's opinion specifically stated that the Veteran's gastrointestinal disability was not related to the Veteran's military service. The Board affords the August 2014 VA physician's opinion considerable probative value because the examiner provided a compelling and logical rationale for the ultimate conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (explaining that most of the value of a medical opinion comes from its reasoning). Further lending weight to the August 2014 VA physician's opinion is the fact that specific references were made to findings from multiple clinical records (including the service treatment records noting gastrointestinal complaints) associated with the claims file. Significantly, there is no competent medical opinion linking a present gastrointestinal disability to service.

The Board also observes that GERD is a known clinical diagnosis. Further, the August 2014 VA examiner has stated that the Veteran's gastrointestinal symptoms are not due to an undiagnosed illness or chronic multisymptom illness. As such, the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 can not provide a basis for service connection in this case.

There is no evidence of record, except for the Veteran's own statements, suggesting a connection between the Veteran's GERD and his active service. On this point, there is no evidence that the Veteran has expertise or training to determine the cause of his GERD and is thus considered a layperson. Whether lay nexus evidence is competent evidence cannot be determined categorically. See Davidson v. Nicholson, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Rather, such a determination depends on the facts of the case. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

In Jandreau v. Nicholson, the United States Court of Appeals for the Federal Circuit (Federal Circuit) provided an example as to when lay evidence was competent, stating that a layperson would be competent to identify a simple condition such as a broken leg, but not competent to provide evidence as to a more complex medical questions. 492 F.3d 1372, 1377 at n.4 (Fed. Cir. 2007). 

In the instant case, the question of whether GERD is caused by an event or incidents in service is not something that can be determined by mere observation. Nor is this question simple, as it requires clinical testing and training to make the appropriate interpretations and conclusions about what the testing demonstrates in conjunction with the symptoms reported. The Board finds that the Veteran's statements as to the cause or date of onset of his GERD symptoms are not competent evidence as to a nexus. As for the date of onset of symptoms, the Board observes that at a December 1996 VA general medical examination the Veteran's digestive system was normal, and an April 2000 private medical record appears to indicate that the Veteran began having such symptoms in 2000. At a May 2004 VA digestive examination the Veteran stated that his nausea and diarrhea had begun in 1993. These statements do not show that the Veteran's gastrointestinal disability began in service.

In sum, the criteria for service connection for gastrointestinal disability have not been established. As the preponderance of evidence is unfavorable to the claim, the Board must deny the claim. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

II. Sleep disability

An August 1983 periodic service examination noted that the Veteran complained of sleep problems related to situational stresses. A February 1985 service treatment record indicates that the Veteran received treatment for insomnia and an anxiety reaction. The service treatment records are negative for any findings of sleep apnea.

At the August 2014 VA examination, the Veteran reported sleep problems starting in 1994 which he attributed to his military service. He stated that he had a hard time falling asleep and that he would awaken and then be unable to go back to sleep.

At the August 2014 VA examination the Veteran was diagnosed with obstructive sleep apnea. The examiner stated that the Veteran's sleep apnea was not likely related to service. The August 2014 VA examiner stated as follows:

There is no known causative effect between military service to include military service in SWA/exposures related to SWA service and sleep apnea. On examination in 1993, there was no evidence of any sign nor symptom of sleep disorder. The veteran reported problems sleeping starting in 1994, well after military service. Even if this were a very early sign of sleep apnea (which is doubtful given the expressed symptoms), the onset of symptoms in 1994 lacks continuity with military service and any exposures, event or illness in service. 

The veteran's sleep apnea was not diagnosed until 2007, 14 years after his last military physical and 16 years after SWA service which shows lack of continuity of sleep apnea to the veteran's service in SWA. The lack of temporal relationship as well as lack of substantiated medical evidence linking SWA service/exposures and sleep apnea make it less likely than not that the veteran's sleep apnea was incurred or the result of his SWA service/exposures. 

There are no sleep disorder symptoms or condition, either chronic or recurrent, which may be attributable to undiagnosed illness, medically unexplained chronic multisymptom illnesses, infectious diseases, or the long-term health effects associated with infectious disease. The veteran has no other identified sleep disorder or condition.

The Board observes that sleep apnea is a known clinical diagnosis. Further, the August 2014 VA examiner has stated that the Veteran's sleep apnea is not due to an undiagnosed illness or chronic multisymptom illness. As such, the provisions of 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 can not provide a basis for service connection in this case.

The Veteran's service treatment records do not show that the Veteran's sleep apnea, the only sleep disorder identified, had its onset during service or shortly thereafter. Further, no healthcare professional has linked the Veteran's sleep apnea to service, and the August 2014 VA examiner has specifically indicated that no such relationship exists.

The question of whether sleep apnea is caused by an event or incidents in service is not something that can be determined by mere observation and is not a simple question. As such, the Board finds that the Veteran's statements as to the cause or date of onset of his sleep apnea symptoms are not competent evidence as to a nexus. In sum, the criteria for service connection for sleep apnea have not been established.

As the preponderance of evidence is unfavorable to the claim, the Board must deny the claim. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Service connection for a gastrointestinal (GI) disorder is denied.

Service connection for a sleep disorder is denied.



REMAND

As for the issues of entitlement to service connection for a heart condition and entitlement to service connection for prostate cancer, in January 2015 VA received the Veteran's timely substantive appeal (VA Form 9) as to those issues. In his substantive appeal, the Veteran requested that he be afforded a Board video hearing as to these issues.

The Veteran has requested a Board video hearing before a Veterans Law Judge via video conference. As such, this case must be remanded to the RO to arrange for a video conference hearing.

Accordingly, the case is REMANDED for the following action:

The Veteran should be scheduled for a hearing before a Veterans Law Judge via Video Conference following the usual procedures under 38 U.S.C.A. § 7107 (West 2014) and 38 C.F.R. § 20.707 (2014).

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
T. L. Douglas
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs