Citation Nr: 1761200 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 09-20 619 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office in Pittsburgh, Pennsylvania


THE ISSUE

Entitlement to service connection for joint disability, diagnosed as fibromyalgia.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Suzie Gaston, Counsel



INTRODUCTION

The Veteran served on active duty from April 1999 to April 2005. 

This matter comes before the Board of Veterans Appeals (hereinafter Board) on appeal from a June 2007 rating decision, by the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California which, in part, denied the Veteran's claim of entitlement to service connection for rheumatoid arthritis. He perfected a timely appeal to that decision. Jurisdiction of this matter was subsequently transferred to the RO in Pittsburgh, Pennsylvania. 

In July 2015, the Board remanded the case to the RO in order to afford the Veteran a hearing. On August 18, 2015, the Veteran testified at a Board hearing. A transcript of that hearing is of record. 


FINDINGS OF FACT

1. The Veteran served in the Southwest Asia Theater of operations during the Persian Gulf War. 

2. Resolving all doubt in the Veteran's favor, during the pendency of the appeal, the Veteran has been diagnosed with fibromyalgia that manifested to at least a compensable degree. 


CONCLUSION OF LAW

The criteria for service connection for a joint disability, diagnosed as fibromyalgia, have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1117, 5107 (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.317 (2017). 



REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duty to Notify and Assist.

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See generally, 38 U.S.C. §§ 5103, 5103A (2012); 38 C.F.R. §§ 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

II. Laws and Regulations.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110 (2012); 38 C.F.R. § 3.303(a) (2017). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection will be presumed for certain chronic diseases, including arthritis, if they were manifest to a compensable degree within the year after active service. 38 U.S.C. §§ 1101, 1112, 1113 (2012); 38 C.F.R. §§ 3.307, 3.309(a) (2017). 

For a showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." Continuity of symptomatology is required where the condition noted during service is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. If the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b) (2017). 

Furthermore, compensation may be granted for disability due to undiagnosed illness of a Veteran who served in the Southwest Asia Theater of operations during the Persian Gulf War. 38 U.S.C. § 1117. 

During the pendency of this appeal, Congress revised 38 U.S.C. § 1117, effective March 1, 2002. In the revised statute, the term "chronic disability" was changed to "qualifying chronic disability," and the definition of "qualifying chronic disability" was expanded to include (a) undiagnosed illness, (b) a medically unexplained chronic multi-symptom illness, to include chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome, that is defined by a cluster of signs or symptoms, or (c) any diagnosed illness that the Secretary determines, in regulations, warrants a presumption of service connection. Effective June 10, 2003, VA promulgated revised regulations to, in part, implement these statutory changes. See 38 C.F.R. § 3.317(a)(2). 

Under 38 U.S.C. § 1117(a)(1), as amended, compensation is warranted for a Persian Gulf veteran who exhibits objective indications of a "qualifying chronic disability" that became manifest during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent during the presumptive period prescribed by the Secretary. The period within which such disabilities must become manifest to a compensable degree in order for entitlement to compensation to be established is currently December 31, 2016. See 38 C.F.R. § 3.317(a)(1)(i). In order to qualify, the chronic disability must not be attributed to any known clinical disease by history, physical examination, or laboratory tests. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a), (b). 

The term "objective indications of a qualifying chronic disability" includes both "signs," in a medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(3). Signs or symptoms that may be manifestations of undiagnosed illness or a chronic multi-symptom illness include the following: fatigue, unexplained rashes or other dermatological signs or symptoms, headache, muscle pain, joint pain, neurological signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the upper or lower respiratory system, sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, or menstrual disorders. 38 U.S.C. § 1117(g). 

The term "medically unexplained chronic multisymptom illness" means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(ii). Disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period will be considered chronic. The six-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4). 

The Veteran can provide competent reports of factual matters of which he has first-hand knowledge, such as experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a lay person is competent to identify the medical condition (noting that sometimes the lay person will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer), (2) the lay person is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Similarly, laypersons are competent to diagnose and provide nexus opinions to some extent, notably where the diagnosis or opinion is not of a complex nature. Id., see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 

III. Factual background & Analysis-S/C Joint disability.

The Veteran contends that he has rheumatoid arthritis that had its onset on active duty. At his personal hearing in August 2015, the Veteran reported that the condition started in service when he suddenly woke up one morning and began experiencing pain and swelling in his joints; he stated that the symptoms became progressively worse. The Veteran indicated that his joints were so swollen that they had to cut his uniform off his body. The Veteran testified that he was sent to Landstuhl, Germany, where he was treated with injections and other medications. The Veteran maintained that they initially told him that he had rheumatoid arthritis, but then they changed the diagnosis. The Veteran related that he continues to experience similar symptoms today that he experienced in service. 

In this regard, the Board notes that the Veteran's service treatment records (STRs) clearly show that beginning in December 2002, there were multiple reports of various joint pains of the ankles, elbow, feet, and knees. In November 2003, the Veteran was seen for complaints of right knee and ankle pain. The assessment was rheumatoid arthritis. Among the records is the report of a physical examination performed on November 17, 2004. It was noted that the Veteran was stationed in Kuwait in 2001 for eight months, then again from September 2002 to January 2003. He was medically evacuated from Landstuhl due to inflammatory arthritis. It was noted that the Veteran began having pain and swelling in multiple joints from December 2002 most prominently in the right ankle, both knees, and right elbow. Following testing, the Veteran was diagnosed with polyarticular arthritis, likely reactive versus inflammatory. The report of a Medical Evaluation Board Proceedings, dated December 14, 2004, indicates that the Veteran was diagnosed with Reiter's Syndrome, which was incurred on active duty. 

Post-service treatment records also show that the Veteran has received treatment for chronic joint pain. Significantly, in conjunction with his claim for service connection, the Veteran was afforded a VA examination in March 2007. At that time, he complained of right dorsal foot pain, right medial knee pain, bilateral groin pain, bilateral hip pain, bilateral finger stiffness and soreness, right wrist pain right elbow pain and mechanical chest pain. The Veteran reported that his symptoms began in December 2002 while he was stationed in Kuwait. Since then, the Veteran reports that his symptoms have been getting progressively worse. The Veteran indicated that he has constant daily pain that is migratory; he described the pain as sharp in character. He stated that, when the pain occurs, he is bedridden and does not want to move at all. The examiner noted that the Veteran was recently seen by rheumatology and a comprehensive workup failed to diagnose either Reiter's syndrome or rheumatoid arthritis. A lab work, including a uric acid level was normal at 5.0. He noted that the anti CCP, IgG antibody was also normal at 6 units. Following the evaluation, the pertinent diagnosis was polyarthralgia of unknown etiology (possible fibromyalgia). The examiner noted that the Veteran's complaints are not secondary to an inflammatory polyarthritis, such as rheumatoid arthritis or Reiter's syndrome. The examiner opined that the Veteran may have fibromyalgia. He noted that the Veteran's joint function for all his joints were perfectly intact. 

In August 2011, the Veteran was seen for a follow up evaluation of joint pain. It was noted that he had a past medical history of reactive arthritis. The assessment was arthralgias. 

Significantly, the June 2014 and December 2014 VA examiners specifically addressed whether the Veteran had a current diagnosis of rheumatoid arthritis. The June 2014 VA examiner stated that, after reviewing the previous examination of March 2007, concluding after normal rheumatoid inflammatory studies being normal and no classic physical joint findings consistent for rheumatoid disease or Reiter's syndrome, and with positive tender trigger points and successful treatment of pain with medications, leads him to agree that the Veteran has a polyarthralgia. 
The December 2014 VA examiner likewise found that the Veteran does not currently have rheumatoid arthritis or Reiter's syndrome. The examiner explained that Reiter's syndrome is a condition where there is arthritis associated with inflammation of the urinary tract, eyes, skin, and mucous membranes; it is referred to as a "reactive" arthritis, an autoimmune disorder where the immune system "reacts" to infection within the body, usually related to the GI or GU tracts. No specific test makes the diagnosis. The examiner noted that the symptoms can "come and go" and in most cases with resolve within a year. In the Veteran's case, symptoms began in December 2002 while he was in Kuwait. It was noted that he was treated with Prednisone for a while and did have some improvement from that per the record. He also had a course of Enbrel, but it was uncertain whether that helped. The examiner noted that, while there is a notation that Reiter's syndrome was the diagnosis in the case, there is nothing on examination or lab tests that would support that Reiter's would be the cause of the Veteran's continued pain symptoms. Therefore, it is less likely than not that the Veteran's polyarthralgia of unknown etiology are likely related to or a progression of physical complaints diagnosed as Reiter's syndrome in service. 

After careful review of the evidentiary record, the Board resolves all reasonable doubt in the Veteran's favor and finds that service connection for fibromyalgia is warranted. See 38 C.F.R. § 3.317(a); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

As discussed above, under 38 C.F.R. § 3.317, service connection is presumed where a veteran exhibits objective indications of a disability due to a medically unexplained chronic multisymptom illness or symptoms, including fibromyalgia, provided that such disability manifests either during active service in the Southwest Asia theater of operations or to a degree of 10 percent or more not later than December 31, 2016. See 38 C.F.R. § 3.317(a). 

The Veteran served in the Southwest Asia Theater of operations during the Gulf War, as documented in his DD Form 214; it is reported that he served in Kuwait/Iraq. Post-service clinical evidence reflects objective indications of a chronic disability, to include the Veteran's competent and continuous reports of sore joints and muscles during and since service, as well as the March 2007 diagnosis of fibromyalgia provided after a clinical interview and physical examination. Moreover, in December 2014, the VA examiner specifically noted that the Veteran began manifesting symptoms of polyarthralgia in service in December 2002. The examiner also noted that the Veteran was treated with medications including Prednisone and Enbrel. 

In light of the foregoing, service connection is warranted as the clinical evidence demonstrates that, during the pendency of the appeal (i.e. since January 2007), the Veteran was diagnosed with fibromyalgia. See McClain, 212 Vet. App. at 321. See also Gutierrez v. Principi, 19 Vet. App. 1, 8 (2004) (finding that evidence "specifically linking" the Veteran's current disability to service or the Gulf War is not required under § 3.317). Further, clinical evidence and the Veteran's reports illustrate that such disability was at least compensably disabling as to require continuous medication. See 38 C.F.R. § 4.71a, Diagnostic Code 5025. The evidence does not otherwise suggest that the March 2007 diagnosis of fibromyalgia was caused by a supervening condition or event that occurred since separation, or that it was the result of his willful misconduct or the abuse of alcohol or drugs. See 38 C.F.R. § 3.317(a)(7)(i)-(iii). 


ORDER

Service connection for fibromyalgia is granted. 




____________________________________________
James L. March
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs