﻿Citation Nr: 18132497
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 13-13 779
DATE: September 6, 2018
ORDER
Entitlement to service connection for persistent depressive disorder is granted.
Entitlement to service connection for a respiratory disability is denied.
FINDINGS OF FACT
1. The Veteran served in the Southwest Asia Theater of operations during the Persian Gulf War Era. 
2. It is reasonably shown that the Veteran’s persistent depressive disorder was incurred in service. 
3. The Veteran is not shown to have (or at any time during the pendency of the instant claim to have had) a diagnosed or undiagnosed respiratory disability.
CONCLUSIONS OF LAW
1. Service connection for persistent depressive disorder is warranted. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.304.
2. Service connection for a respiratory disability is not warranted. 38 U.S.C. §§ 1110, 1117, 1131, 5107; 38 C.F.R. §§ 3.303, 3.304, 3.317.
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The appellant is a Veteran who served on active duty from March 1989 to March 1992. These matters are before the Board of Veterans’ Affairs (Board) on appeal from July 2010 rating decision that denied service connection for major depressive disorder and a respiratory disability, and a December 2010 rating decision that denied service connection for PTSD. In August 2015 and September 2017, the case was remanded for additional development. 
[The Veteran initially filed a claim seeking service connection for posttraumatic stress disorder (PTSD). See January 2010 claim. In August 2015, the Board recharacterized the issue (in accordance with Clemons v. Shinseki, 23 Vet. App. 1 (2009)), to encompass any psychiatric disability, however diagnosed.]
Legal Criteria, Factual Background, and Analysis
Service connection may be granted for disability due to disease or injury incurred in or aggravated by active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may be granted for a disease initially diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38. C.F.R. § 3.303(d).
To substantiate a claim of service connection, there must be evidence of: (1) a current claimed disability; (2) incurrence or aggravation of a disease or injury in service; and (3) a nexus between the current disability and the disease or injury in service. See Shedden v. Principi, 281 F.3d 1163, 1166-67 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). 
Lay evidence may be competent evidence to establish incurrence. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (e.g., a broken leg), (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. However, competent medical evidence is necessary where the determinative question is one requiring medical knowledge. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).
For veterans who served in the Southwest Asia theater of operations during the Persian Gulf Era, service connection on a presumptive basis may be established for a qualifying chronic disability that became manifest during active duty or became manifest to a compensable degree within a prescribed presumptive period. 38 U.S.C. § 1117; 38 C.F.R. § 3.317. The Southwest Asia Theater of operations includes Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(e)(2).
The term ‘qualifying chronic disability’ means a chronic disability resulting from any of the following (or any combination of the following): (A) an undiagnosed illness; or (B) a medically unexplained chronic multisymptom illness that is defined by a cluster of signs or symptoms, such as: (1) chronic fatigue syndrome; (2) fibromyalgia; (3) functional gastrointestinal disorders (excluding structural gastrointestinal diseases). 38 U.S.C. §§ 1117, 1118; 38 C.F.R. § 3.317(a)(2)(i). 
The term “medically unexplained chronic multisymptom illness” means a diagnosed illness without conclusive pathophysiology or etiology, that is characterized by overlapping symptoms and signs and has features such as fatigue, pain, disability out of proportion to physical findings, and inconsistent demonstration of laboratory abnormalities. Chronic multisymptom illnesses of partially understood etiology and pathophysiology, such as diabetes and multiple sclerosis, will not be considered medically unexplained. 38 C.F.R. § 3.317(a)(2)(ii). 
There must be “objective indications of a qualifying chronic disability,” which include both “signs,” in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. 38 C.F.R. § 3.317(a)(1) and (3). A disability is considered “chronic” if it has existed for six months or more or if the disability exhibits intermittent episodes of improvement and worsening over a six-month period. The sixth month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. 38 C.F.R. § 3.317(a)(4). 
Signs or symptoms which may be manifestations of an undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to, fatigue, unexplained rashes or other dermatological signs or symptoms, headaches, muscle pain, joint pain, neurological signs or symptoms, neuropsychological signs or symptoms, signs or symptoms involving the respiratory system (upper or lower), sleep disturbances, gastrointestinal signs or symptoms, cardiovascular signs or symptoms, abnormal weight loss, or menstrual disorders. 38 C.F.R. § 3.317(b).
With claims for service connection for a qualifying chronic disability under 38 C.F.R. § 3.317, the Veteran is not required to provide competent evidence linking a current disability to an event during service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Lay persons are competent to report objective signs of illness such as joint pain or fatigue. Id at 9-10. The symptom is presumed to be related to service, and unlike a claim of “direct service connection,” VA cannot impose a medical nexus requirement. 38 U.S.C. § 1117; 38 C.F.R. § 3.317. Undiagnosed pain may be the basis of an award of compensation under 38 U.S.C. § 1117. Joyner v. McDonald, 766 F.3d 1393, 1395 (Fed. Cir. 2014). 
Compensation shall not be paid for a chronic disability: (1) if there is affirmative evidence that the disability was not incurred during active military, naval, or air service in the Southwest Asia theater of operations; or (2) if there is affirmative evidence that the disability was caused by a supervening condition or event that occurred between the veteran’s most recent departure from active duty in the Southwest Asia theater of operations and the onset of the disability; or (3) if there is affirmative evidence that the disability is the result of the Veteran’s own willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. § 3.317(a)(7). 
When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 
The Board has reviewed all the evidence in the record, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate and the analysis will focus on what the evidence shows, or fails to show, as to the claims.
Service connection for persistent depressive disorder is granted. 
The Veteran contends that he has a psychiatric disability that resulted from a nighttime airborne jump when he collided with another paratrooper’s chute deploying while they were descending, or from stress associated with serving in a unit involved in heavy combat in Iraq. See December 2015 statement. An undated VA memorandum conceded the reported parachute stressor. A December 2015 JSRRC memorandum concluded that the Veteran would qualify for PTSD based on in-service fear of hostile military or terrorist activity and the stressor is consistent with the places, types, and circumstances of his service. 
On June 1988 service entrance examination, psychiatric clinical evaluation was normal; the Veteran denied trouble sleeping, depression or excessive worry, loss of memory, and nervous trouble of any sort. A June 1990 service treatment record (STR) notes that the Veteran was admitted to the emergency room after an overdose of 7 Norgesic. The record notes that the Veteran’s unit members “began to give him difficulty” over his refusal to jump during an airborne operation; he became “acutely upset and took the Norgesic in a suicide attempt. This attempt occurred with the background of a building feeling of frustration and depression in the weeks” prior. Following a 5-day admission, the final diagnosis was adjustment disorder with depressed mood and alcohol abuse. 
Postservice treatment records contain various diagnoses of depressive disorder. See May 1998 VA psychology record (noting the Veteran’s report that he has felt “depressed his entire life”), January 2009 VA mental health record, and June 2011 VA mental health record. Postservice treatment records show that PTSD was diagnosed on some occasions (September 2010 primary care record and January 2012 VA mental health record), but not on others (May 1998 VA psychology record and June 2011 VA mental health record). 
On April 2010 VA PTSD examination, “chronic depression and personality disorder NOS” (the latter by history based on previous diagnoses by [mental health] providers) was diagnosed. The examiner opined that the diagnosed disorders were not at least as likely as not due to service because “adjustment disorder, by clinical definition, must resolved within 6 months of the identified stressor. If there are persisting symptoms, they occur in response to a chronic stressor.” The examiner explained that the Veteran did not meet the diagnostic criteria for PTSD as he did “not report persistent re-experiencing of the conceded stressor, which is necessary for a diagnosis of PTSD.” An August 2010 addendum by the April 2010 examiner explains that the Veteran does not meet the criteria for a diagnosis of PTSD (as he did not report persistent re-experiencing of the stressor event, which is necessary for a diagnosis of PTSD). 
A May 2013 private medical statement from Dr. H.S. notes diagnoses of PTSD, major depressive disorder, and anxiety disorder. However, the statement is conclusory; it does not include any rationale and does not reflect familiarity with the Veteran’s record. 
On July 2014 VA psychiatric examination, unspecified depressive disorder was diagnosed; the examiner explained that the Veteran did not meet the diagnostic criteria (under DSM-IV or DSM V) for a diagnosis of PTSD. He opined in part, that the Veteran’s current depressive symptoms likely preexisted military service and were not aggravated beyond the normal progression by service. 
At the April 2015 hearing, the Veteran’s representative noted that the Veteran has diagnoses of depressive disorder and PTSD. Dr H.S. testified that she diagnosed PTSD and major depressive disorder based on the parachute event, but did not provide rationale for the diagnoses or reconcile the diagnosis of PTSD with evidence of record which shows that the diagnostic criteria for PTSD were not met.
In August 2015, the Board remanded the matter for further development, to include for reconciliation of the conflicting PTSD diagnoses of record, and for an adequate medical opinion (as the July 2014 examiner did not cite to clear and unmistakable evidence of a pre-existing psychiatric disability, and the record does not show a notation of a psychiatric disability on service entrance). 
On September 2015 VA PTSD examination, the same VA examiner again found that the criteria for a diagnosis of PTSD were not met; he reported that the Veteran did not exhibit any clinically significant intrusive symptoms. He did not, as directed, discuss and reconcile the conflicting PTSD diagnoses of record. He diagnosed persistent depressive disorder, but the opinion again failed to reflect consideration of the applicable legal standards regarding what constitutes a pre-existing disability.
In October 2015, VA received an undated statement from Dr. H.S. who assigned the Veteran diagnoses of PTSD and Chronic Major Depressive Disorder, and opined that his PTSD is related to “several incidents that occurred during his active military duty.” She opined that the Veteran “has continuously met the diagnostic threshold for Major Depressive Disorder.” 
In September 2017, the Board again remanded the claim for an adequate medical opinion. In October 2017, a VA psychiatrist reviewed the entire record. He noted the clinical diagnoses of PTSD (including in January 2012 and May 2013), but noted a “lack of sufficient detail to substantiate the diagnosis.” He explained that April 2010, July 2014, and September 2015 examinations were consistent in noting that the Veteran did not meet the criteria for a diagnosis of PTSD as he did not meet the intrusive symptom cluster (criterion B) for PTSD. He noted consistent diagnoses of “essentially identical” depressive disorders. He wrote, “In my clinical opinion, Persistent Depressive Disorder is the appropriate diagnosis.” He opined that such was likely due to genetic factors and found the Veteran’s reports of depressive symptoms prior to service (in April and May 1998 clinical records) sufficient to satisfy that depression clearly and unmistakably pre-existed service. He found no evidence that the “course of the Veteran’s condition was significantly altered by military service.” Notably, he did not address the Veteran’s attempted suicide in service. 
It is not in dispute that the Veteran has a current diagnosis of persistent depressive disorder. The record also shows that following a suicide attempt in service the Veteran was assigned a diagnosis of adjustment disorder with depressed mood. While there is some evidence that the Veteran was depressed prior to service (See May 1998 [postservice] clinical record), on service entrance examination psychiatric clinical evaluation was normal, and the Veteran denied trouble sleeping, depression or excessive worry, loss of memory, and nervous trouble of any sort. Accordingly, he is entitled to a presumption of soundness on entry in service with respect to psychiatric disability. That presumption is rebuttable only by clear and unmistakable evidence; and if rebutted, there is a further presumption of aggravation, which likewise is rebuttable only by clear and unmistakable evidence. The record does not contain clear and unmistakable evidence (i.e. objective clinical evidence) which rebuts the applicable presumptions. 
Accordingly, the Board finds that the probative evidence of record is at least in equipoise that the Veteran’s persistent depressive disorder was incurred in service. Although no one particular examination report/medical statement (either VA or private) is fully adequate for rating purposes by itself, in resolving any remaining reasonable doubt in the Veteran’s favor, as required, the Board finds that the evidence cumulatively shows that Veteran’s persistent depressive disorder had its onset during his active service, and that service connection for such disability is warranted. 
The grant of service connection for a depressive disorder in essence renders moot the claim of service connection for PTSD, as the disabilities are rated under the same criteria (See also Clemons v. Shinseki, 23 Vet. App. 1 (2009)). [Nonetheless, the Veteran is entitled to establish service connection for the specific diagnosis of PTSD, if he so chooses. At this point the record does not show a diagnosis of PTSD in accordance with the regulatory criteria (as the symptoms required under DSM V to establish the diagnosis are not shown; see October 2017 VA examination report). The diagnosis of PTSD by Dr. H.S. is conclusory, as it does not include rationale that identifies the symptoms that support the diagnosis. If it remains the Veteran’s intent to establish service connection for the specific diagnosis of PTSD, be may initiate the process by submitting evidence of a diagnosis of PTSD under DSM-V based on a stressor that has been acknowledged as corroborated.] 
Service connection for a respiratory disability is denied. 
The Veteran’s service personnel records show that he served in Southwest Asia from September 1990 to March 1991. His STRs show March 1989 complaints of runny nose, stomach cramping, and cough; he was treated with decongestants; no assessment was provided. A March 1990 STR notes complaints of headache, runny nose, congestion, and cough for 2 days; examination showed his lungs were clear to auscultation; the assessment was upper respiratory infection. An April 1991 STR notes complaints of nasal congestion and clear drainage; the impression was vasomotor/allergic rhinitis. July 1991 complaints of sore throat, vomiting, and earaches; examination showed clear lungs; the assessment was pharyngitis and infectious mononucleosis. He received intravenous antibiotics and aerosol nebulizer treatment. A December 1991 STR notes complaints of chest cold and cough with sputum; the record reflects that he left without being seen. 
Postservice records show November 2, 1998 complaints of a morning cough with white/yellow sputum and postnasal drip; the Veteran related his cough to his service in Desert Storm. The assessment was cough; he was treated for postnasal drip with steroid nasal inhaler and pseudoephedrine. On November 17, 1998 followup visit, the Veteran reported that he had the flu, which had resolved. He “attribute[d] coughing to dry air and dust in house” and reported that he was going to get a humidifier. He was advised to follow up with his primary care provider as scheduled. 
A January 2009 VA treatment record notes complaints of a non-productive cough since 1992; he denied chronic sinusitis or reflux symptoms. The Veteran wondered “if this is due to allergies since he is a ‘mouth breather.’” Chest x-rays were normal; PFTs did not show clear etiology and were normal “except mild diffusion block.” 
On April 2010 VA general medical examination, the Veteran reported a dry morning cough without hemoptysis or sputum. He denied dyspnea on exertion and use of medications. On examination, his chest was normal to inspection, palpation, percussion, and auscultation. His respiratory rate was 16 and there were normal pulses and capillary refill in the hands and feet with no swelling. The diagnosis was “Normal respiratory examination without benefit of PFTs.” 
On September 2010 VA Gulf War examination, the Veteran’s nose, mouth, throat, and sinuses were normal; his chest was clear to auscultation and percussion; he had good exercise tolerance. The examiner opined that the Veteran does not have Gulf War Syndrome as “he does not fit the condition and unique requirements.” He further stated that there is, “No diagnosis of unknown etiology and no undiagnosed illness.” 
On November 2010 VA general medical examination, the Veteran reported a cough that “can occur when going indoors to outdoors.” He denied allergic reactions although he requested a Claritin prescription “given that he has a new dog and eyes are watery and itchy.” He reported that he quit smoking in 2005; he denied chronic medication use. The diagnosis was “chronic cough is of unknown etiology” pending PFT results; the Veteran was advised to follow up with his primary care provider “for possible treatment of allergic response of watery eyes.” In a November 17, 2010, addendum, the examiner noted that PFT results showed “a mild defect in gas diffusion” with “Normal spirometry, lung volumes, and resting arterial oxygen saturation.” 
At his April 2015 Board hearing, the Veteran was asked by the undersigned if he has a current diagnosis of a respiratory disability; on two separate occasions the Veteran testified that he does not; the Veteran’s representative confirmed that he has not received such a diagnosis. 
In an August 2015 remand, the Board noted that the November 2010 VA examination report noted a chronic cough of unknown etiology, and remanded the matter for medical guidance as to whether that notation reflected a chronic disability or symptoms of an undiagnosed illness. 
On September 2015 examination, the Veteran reported that he has had respiratory symptoms since 1992 that he attributed to his service during the Gulf War. He was never diagnosed with a pulmonary condition. He reported a morning cough, that he “sometimes gets short of breath”, and that he “gets congested in his upper chest and feels like there’s ‘something there.’” [The examiner’s review of the record found that the Veteran has not addressed this issue with his primary care provider since 1999.] The Veteran reported that he self-treats with over-the-counter inhalers, and denied change in symptomatology since the 2010 C&P examination. Following review of the record and examination of the Veteran, the examiner indicated that Veteran does not have a respiratory disability. He explained that pulmonary functions tests in 2010 showed normal spirometry, borderline response to bronchodilation and mild defect in gas diffusion; the Veteran reported no change in his symptoms since service. Review of the record did not show ongoing care for any respiratory symptoms. 
In September 2017, the Board remanded the matter for an addendum opinion as the September 2015 examiner did not address whether any symptoms reported or noted reflect that the Veteran has an undiagnosed illness manifested by respiratory complaints.
In a September 2017 addendum opinion, a different physician reviewed the Veteran’s entire record and reported, “There is no evidence that the Veteran has an undiagnosed illness manifested by respiratory complaints.” He provided the following rationale:
Respiratory C&P exams from November 2010 and September 2015 were reviewed, as were clinical records available in CPRS from 1998 to present. Veteran reported a chronic morning cough in the 1990s that was assessed as being post nasal drip, the last mention of which was December 2000. The next mention of cough was the 2015 compensation and pension exam. May 25, 2016 general medical examination documents GERD with coughing. There is no evidence of ongoing treatment for any respiratory complaints since December 2000, nearly 17 years ago. November 2010 documents chronic cough of unknown etiology, however allergy was suspected for at least some of his symptoms—he requested Claritin due to allergic symptoms from his new dog and was referred back to his pcp to address this. Mild defect in gas diffusion on 2010 PT, a DLCO of 70%, is less likely than not clinically significant.
The threshold matter that must be addressed here (as in any claim seeking service connection) is whether there is competent evidence that the Veteran has the disability for which service connection is sought. The competent (medical) evidence does not show a diagnosis of a respiratory disability during the pendency of this claim. See April 2010, November 2010, and September 2015 VA examination reports. Notably, during the April 2015 Board hearing, the Veteran himself twice denied having a current diagnosis of a respiratory disability; and the record does not reflect objective findings by an examining physician, or non-medical indicators capable of independent verification supporting that he has a chronic respiratory disability. 
In September 2017, following review of the entire record (including PFTs), a physician opined that “There is no evidence that the Veteran has an undiagnosed illness manifested by respiratory complaints.” He explained that the Veteran’s complaints of cough were related to postnasal drip, allergies were suspected for some of his reported symptoms, and that the mild defect in gas diffusion in 2010 was less likely than not clinically significant. Accordingly, the most probative competent evidence does not show objective signs or symptoms which may be manifestations of an undiagnosed illness. 38 C.F.R. § 3.317(a)(1) and (3). Accordingly, service connection for on a respiratory disability on a presumptive basis (as an undiagnosed illness under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317) is not warranted. In the absence of proof that the Veteran has a diagnosed (or undiagnosed) chronic respiratory disability, there is no valid claim of service connection for such disability. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998), cert. denied, 526 U.S. 1144 (1999). 

 
GEORGE R. SENYK
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD J. Dupont, Associate Counsel