# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-2105

James P. Gutierrez, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     December 23, 2004   )

*Nancy L. Foti* and *Barton F. Stichman*, both of Washington, D.C., were on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Kathy A. Banfield*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, KASOLD, and HAGEL, *Judges*.

GREENE, *Judge*:  Veteran James P. Gutierrez appeals, through counsel, a September 12, 2001, Board of Veterans' Appeals (Board) decision that denied his claim for service connection under 38 U.S.C. § 1117 for undiagnosed illnesses incurred during the Persian Gulf War.  Record (R.) at 1-19.  This appeal is timely, and the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266. Because the Board failed to provide an adequate statement of reasons or bases for its decision, the decision will be vacated and the matter remanded to the Board for further action.  *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990).

## I.  FACTS

Mr. Gutierrez served honorably on active duty in the U.S. Army from May 1987 to July 1991, including service in the Persian Gulf for which he was awarded the Southwest Asia Service Medal.

R. at 64, 92.  Upon entering service, Mr. Gutierrez's physical condition was normal.  R. at 21-26. His service medical records (SMRs) indicate that he was treated for lower-back pain in June 1990. R. at 27, 44.  In March 1991, Mr. Guteirrez suffered a "Jones fracture" of his left foot.  R. at 51.  A Jones fracture is defined as a "fracture of the fifth metatarsal."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 662 (28th ed. 1994).  In 1991, he was awarded service connection for residuals of the Jones fracture, and assigned a 10% disability rating.  R. at 76.

During a July 1996 VA Persian Gulf Registry medical examination, Mr. Gutierrez complained that since July 1991, he had experienced a loss of energy, inability to "work out," dizziness, and light-headedness.  R. at 105-11.  He also stated that since October 1991, he had experienced aching in his muscles and joints.  R. at 106, 108.  Mr. Gutierrez further related that since June 1994, he had noticed a loss of his ability to concentrate and a loss of memory.  R. at 106.  He also reported that he and his wife had been trying to have a child and that he had been told that he had "slow sperm."  *Id.*  The medical examiner reported that Mr. Gutierrez's most severe symptom during the examination was fatigue and that muscle and joint aches, memory loss, and inability to concentrate were all currently present.  R. at 352.  The examiner did not diagnose any cause for those symptoms.  *See* R. at 105-11.  He referred Mr. Gutierrez to outpatient care, but a specific reason was not noted in the examination report.  R. at 354.

In March 1997, Mr. Gutierrez filed with a VA regional office (RO) a claim for service connection for "Gulf War Syndrome" as manifested by symptoms of joint and muscle pain, dizziness, fatigue, and decreased vision.  R. at 79.  An April 1997 radiology report showed that he had widespread spinal stenosis and protruding discs at L3-L4 and L4-L5.  R. at 197.  Dr. David Caldwell, a private orthopedic surgeon, opined that Mr. Gutierrez's episodic lower-back pain and complaints of left-foot numbness were probably related to the L4-5 disc protrusion.  R. at 198.  The report from a September 1997 VA general medical examination reflects Mr. Gutierrez's assertion that, while he was in the Persian Gulf, he had been exposed to oil-fire smoke and took nerve-gas pills every day.  R. at 125.  The report also records his complaints of muscle and joint pain, fatigue, a back disorder, light-headedness, and foot difficulties.  R. at 125-27.  There were no diagnoses made during that VA examination.  *Id.*  Additionally, medical records dated September 1997 from a VA Persian Gulf War Clinic reflect that Mr. Gutierrez was suffering from mild fatigue, aches and pains in his

2

joints, and blood in his urine, but provided no medical etiology for these maladies. R. at 332, 367-68.

In October 1997, the RO denied Mr. Gutierrez's claim after concluding that his symptoms were not incurred in or caused by his service in the Persian Gulf. R. at 137-141. The RO found that his complaints about his claimed conditions were first made during the Persian Gulf War Registry examination in July 1996 and that his SMRs were negative for fatigue, dizziness, and joint and muscle pain. R. at 138. Mr. Gutierrez appealed to the Board and argued that he began suffering from his claimed symptoms within a year after his discharge from service and that they were now more constant and persistent. R. at 145-46, 191-92.

During an appeal to the Board, Mr. Gutierrez submitted statements from his wife (R. at 150), a friend (R. at 202) ("[I] have noticed a decline in his general health. He has [not] been as active as [I] am used to seeing him."), and his father (R. at 203). His wife stated: "I have noticed a decline in his general health. He does [not] seem to have as much energy, tires quickly, complains of aches [and] pains throughout his body, and seems to forget information easily." R. at 150. Those statements provided individual and personal observations of Mr. Gutierrez's declining health. Additionally, a February 1998 VA vision examiner diagnosed Mr. Gutierrez as having compound myopic astigmatism with hysterical visual fields. However, no cause for this defect was provided. R. at 154-55. That same month, Mr. Gutierrez was given a VA spinal examination but no diagnosis was made for any specific illnesses causing his complaints of joint and muscle pain, fatigue, dizziness, memory loss, or loss of concentration. R. at 157-59.

While being examined in March 1999, Mr. Gutierrez again complained of easy fatigability, decreased vision, and foot and back pain. R. at 227-29. No cause for his fatigue was determined. Medical records from a Gulf War Clinic, dated November 15, 1999, also revealed that he had reported having painful and aching joints. R. at 329. In May 2000, the Board remanded to the RO Mr. Gutierrez's claim for readjudication. The RO was ordered to first obtain results from VA's Gulf War Study Program and additional medical records that had been identified by Mr. Gutierrez. R. at 319. In August 2000, the RO issued a Supplemental Statement of the Case (SSOC) confirming the denial of Mr. Gutierrez's claim. R. at 383. He appealed to the Board and submitted VA medical records dated April 25, 2001, that indicated that he had complained of problems with sleeping, concentrating, and low energy, and that he had advised the examiner that he felt irritable, nonsocial,

and unmotivated. R. at 426-27. VA medical records dated from March through December 2000, documented Mr. Gutierrez's continued complaints of fatigue, low energy, poor concentration, and sensitivity to loud noises, and recorded his concern that he may have arthritis in his left leg related to his claimed symptoms. R. at 327, 423-25. These records also reflect that Mr. Gutierrez complained of having trouble sleeping. *Id.*

After reviewing the evidence, the Board, in the September 12, 2001, decision on appeal, denied Mr. Gutierrez's claim. The Board stated: "The Board does not believe that [Mr. Gutierrez] has had fatigue, dizziness, memory loss, and a loss of concentration since his discharge from active service." R. at 17. The Board specifically found that "there is no competent evidence of an undiagnosed illness manifested by joint and muscle pain, fatigue, dizziness, decreased vision (other than the use of glasses), memory loss and loss of concentration associated with the veteran's active service" and concluded that Mr. Gutierrez's complaints of these conditions over an extended period of time were "not credible" and purely subjective. R. at 3, 17. The Board stated further:

> The only evidence of record before the Board specifically linking [Mr. Gutierrez's] current alleged disabilities to his service or Gulf War [S]yndrome consist of the veteran's own evidentiary assertions. Such evidence is of limited probative weight. While the veteran is competent to describe manifestations perceivable to a lay party, he is not competent to diagnose himself with disabilities and then associate those disabilities with his active service or with any form of Persian Gulf [S]yndrome.

R. at 16. In conclusion, the Board found that "the preponderance of the medical evidence fails to indicate that these disabilities are related to service or illness associated with service*." Id.* Mr. Gutierrez appealed to the Court.

On appeal, Mr. Gutierrez contends that the evidence of record establishes that he has undiagnosed medical illnesses resulting from his service in the Persian Gulf that entitle him to service connection. Appellant's Brief (Br.) at 7-10. He maintains that he satisfies all requirements of section 1117 and VA regulations because he is a Persian Gulf veteran, and that his symptoms demonstrate objective indications of chronic disabilities that are not attributed to any known clinical diagnoses. *Id*. Mr. Gutierrez contends that a remand is not required to provide him with another VA medical examination and that reversal is the appropriate remedy.

4

The Secretary argues that reversal is not supported by the evidence of record. Secretary's Br. at 8. Rather, he contends that the matter should be remanded because (1) VA failed in its duty to assist by not obtaining a current VA medical examination that provided an opinion as to whether any of Mr. Gutierrez's symptomatology was attributable to a specific ongoing disease process or to an undiagnosed illness (Br. at 11-12); (2) VA failed in its duty to notify Mr. Gutierrez of evidence needed to substantiate his claim as required by the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, now codified in part at 38 U.S.C. §§ 5102, 5103, and 5103A (Br. at 7, 14); (3) the Board made a medical determination independent of the medical evidence, in violation of *Colvin v. Derwinski*, 1 Vet.App. 172 (1991)( Br. at 7, 12-13); and (4) the Board did not provide an adequate statement of reasons or bases for its decision (Br. at 12-13). In reply, Mr. Gutierrez waives consideration on appeal of any violation of VA's duty to notify and assist him. Reply Br. at 8-9.

## II. APPLICABLE LAW

The Board's determination of service connection is a finding of fact subject to the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Rose v. West*, 11 Vet.App. 169, 171 (1998); *Horowitz v. Brown*, 5 Vet.App. 217, 221 (1993). A "finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gilbert,* 1 Vet.App. at 52 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Service connection may be established for a disability resulting from personal injury or disease incurred in or aggravated by active service. *See* 38 U.S.C. § 1110, 1131 (2004). Service connection may be established directly or through a statutory presumption. For direct service connection to be awarded, there must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances, lay evidence of an in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *Hickson v. West*, 12 Vet.App. 247, 253 (1999). Alternatively, under certain circumstances service connection may be presumed when the veteran meets the requirements of the presumptions established by statute and regulation. *See Winters v. West*, 12 Vet.App. 203, 209 (1999) (en banc) (service connection awarded automatically on

5

presumptive basis where the veteran served in Vietnam and has one of the enumerated diseases listed in 38 C.F.R. § 3.309), *vacated and remanded on other grounds sub nom. Winters v. Gober,* 219 F.3d 1375, 1380 (Fed. Cir. 2000); *Brock v. Brown*, 10 Vet.App. 155, 162 (1997); *see also* 38 C.F.R. §§ 3.307, 3.309 (2004).

Section 1117 of title 38 of the U.S. Code provides for entitlement to compensation on a presumptive basis to a Persian Gulf War veteran who complains of having an undiagnosed illness or illnesses that are 10% or more disabling during the presumption period established by the Secretary. 38 U.S.C. § 1117(a)(1)(A) and (B). Pursuant to section 1117(d)(2), the Secretary has promulgated 38 C.F.R. § 3.317, which provides, in pertinent part:

> (a)(1) Except as provided in paragraph (c) of this section, VA will pay compensation in accordance with chapter 11 of title 38, United States Code, to a Persian Gulf veteran who exhibits *objective indications* of a *qualifying chronic disability*, provided that such disability:
>
> (i) Became manifest either during active military, naval or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a *degree of 10[%] or more* not later than December 31, 2006; and
>
> (ii) By history, physical examination, and laboratory tests *cannot be attributed to any known clinical diagnosis.*
>
> . . . .
>
> (3) For purposes of this section, "objective indications of chronic disability" include both "signs," in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification.
>
> . . . .
>
> (b) For the purposes of paragraph (a)(1) of this section, signs or symptoms which may be manifestations of undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to:
>> (1) Fatigue
>> (2) Signs or symptoms involving skin
>> (3) Headache
>> (4) Muscle pain
>> (5) Joint pain
>> (6) Neurologic signs or symptoms
>> (7) Neuropsychological signs or symptoms
>> (8) Signs or symptoms involving the respiratory system (upper or lower)
>> (9) Sleep disturbances
>> (10) Gastrointestinal signs or symptoms
>> (11) Cardiovascular signs or symptoms
>> (12) Abnormal weight loss

(13) Menstrual disorders.

38 C.F.R. § 3.317 (2004) (emphases added); *see also* 38 U.S.C. § 1117(g). When promulgating this regulation, VA provided, inter alia, the following explanatory statement:

> The regulation does not require that physicians make such a diagnosis [of an undefined disease]. Physicians should simply record all noted signs and reported symptoms, document all clinical findings, and provide a diagnosis where possible. If the signs and symptoms are not characteristic of a known clinical diagnosis, the physician should so indicate. This conforms with the usual standards of medical practice.
>
> Some veterans may present with purely subjective symptoms, which, nonetheless, establish a basis for a valid claim under the provisions of this rule. We believe, however, that it is not only fair but also in keeping with Congressional intent to require some objective indication of the presence of a  a chronic disability attributable to an undiagnosed illness before awarding compensation.
>
> Ordinarily, an objective indication is established through medical findings, i.e. "signs" in the medical sense of evidence perceptible to an examining physician. However, we also will consider non-medical indications which can be independently observed or verified, such as time lost from work, evidence that a veteran has sought medical treatment for his or her symptoms, evidence affirming changes in a veteran's appearance, physical abilities, and mental or emotional attitude, etc. Lay statements from individuals who establish that they are able from personal experience to make their observations or statements will be considered as evidence when VA determines whether the veteran is suffering from an undiagnosed illness.

60 Fed. Reg. 6,660-63 (February 3, 1995). Manifestations of undiagnosed illnesses are presumed service connected unless there is affirmative evidence that an undiagnosed illness was not incurred in service or was instead caused by a supervening condition. *See* 38 C.F.R. § 3.317 (c)(1)(2).

Thus, in order to establish service connection under 38 U.S.C. § 1117 and 38 C.F.R. § 3.317, a claimant must present evidence that he or she is a Persian Gulf veteran who (1) exhibits objective indications; (2) of a chronic disability such as those listed in paragraph (b) of 38 C.F.R. § 3.317; (3) which became manifest either during active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10% or more not later than

7

December 31, 2006; and (4) such symptomatology by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a).

The Board is required to consider all evidence of record and to consider, and discuss in its decision, all potentially applicable provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589 (1991); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order). Further, the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Gilbert*, 1 Vet.App. at 57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert, supra*. Where the Board fails to meet this obligation, the Court is precluded from effectively reviewing the adjudication. *See Meeks v. Brown*, 5 Vet.App. 284, 288 (1993). Generally, when the Board's statement is inadequate, the matter will be remanded. *See Hicks v. Brown*, 8 Vet.App. 417, 422 (1995).

### III. ANALYSIS

#### A. Mr. Gutierrez's Credibility

The Board determined that Mr. Gutierrez's subjective assertions regarding his claimed symptoms were entitled to no probative weight. R. at 16. The Board concluded in its findings of fact: "Joint and muscle pain, fatigue, dizziness, decreased vision, memory loss[,] and loss of concentration were not evident in service and the preponderance of the medical evidence fails to indicate that these disabilities are related to service or illness associated with service." R. at 3. When addressing this issue, the Board stated:

> [T]he veteran has complained of these disabilities only sporadically. He appears only to complain of these difficulties during VA examinations or when his back and foot bother him. However, during these same examinations, objective medical evidence indicating these disabilities [was] not found. In evaluations of the veteran's service-

8

connected foot disorder, the veteran makes little reference to the disabilities at issue. A review of both the private medical records and outpatient treatment report fails to indicate the alleged disabilities at issue. *The veteran's own spouse fails to note many of the veteran's alleged chronic disorders.*

. . . .

In this case, the Board finds that the veteran's initial claims for VA compensation, the initial VA evaluations, and the veteran's initial statements to the VA following his discharge from active service (in which he fails to mention any disability associated with joint and muscle pain, fatigue, dizziness, decreased vision, memory loss, and loss of concentration) provides affirmative evidence that the undiagnosed illnesses were not incurred during his active military service. It further fundamentally undermines the veteran's credibility in that it is his central contention that he has had these disabilities over an extended period of time following his discharge from service. If this was the case, the Board finds no rational reason to believe that there would not be at least some evidence or indications in support of the veteran's contention or that the veteran would not have noted these difficulties earlier or during his initial examinations. The Board finds that these facts do not support the veteran's case.

The only evidence of record before the Board *specifically linking* the veteran's current alleged disabilities to his service or to Gulf War syndrome consist[s] of the veteran's own evidentiary assertions. Such evidence is of limited probative weight. While the veteran is competent to describe manifestations perceivable to a lay party, he is not competent to diagnose himself with disabilities and then associate those disabilities with his active service or with any form of Persian Gulf syndrome.

R. at 14-15 (emphasis added). If this were a claim for direct service connection, a nexus between Mr. Gutierrez's disabilities and his period of active service would be required. *See Caluza, supra*. In this case, however, evidence is not required "*specifically linking*" Mr. Gutierrez's disabilities to his service or the Gulf War. *See Brock, supra*. Congress has decided as a matter of policy, stemming at least in part from difficulty of proof, that, even though a Persian Gulf War veteran's symptoms may not at this time be attributed to a specific disease, the symptoms may nonetheless be related to conditions in the Southwest Asia theater of operations and, for that reason, are presumed to be service connected. *See* 38 U.S.C. § 1117; 38 C.F.R. § 3.317 (a)(1)(i). Thus, Mr. Gutierrez was not required to provide evidence linking his current conditions to events during service and the

Board erred by imposing such a nexus requirement. Further, as stated above, section 1117 and § 3.317 require that undiagnosed illnesses become manifest to a degree of 10% or more during the presumption period that ends on December 31, 2006. *See* 38 C.F.R.§ 3.317(a)(1)(i). Accordingly, the Board erred by failing to account for that, as well as the other factors discussed below, in determining that Mr. Gutierrez's complaints were not credible because he had not sought treatment for these conditions earlier or did not complain about them during his initial medical examinations.

The Board also found that, although Mr. Gutierrez had complained of joint and muscle pain, fatigue, dizziness, and loss of concentration, the objective medical evidence failed to show any such disabilities. R. at 15. The evidence of record reveals that Mr. Gutierrez consistently complained during VA medical examinations about fatigue, muscle and joint pain, neurologic signs or symptoms (loss of concentration and memory), and sleep disturbances. *See* R. at 98, 106-108, 125-28, 228-29, 329, 348-53, 423, 426-27. These symptoms are specifically identified by VA in its own regulation as possible manifestations of an undiagnosed illness in Gulf War veterans. *See* 38 C.F.R. § 3.317(b). Objective medical evidence is not required for an award of service connection under section 1117. Rather, only competent evidence is required with "signs in the medical sense of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification." 38 C.F.R. § 3.317(a)(2); *see also* 60 Fed. Reg. 6,660-63 (February 3, 1995). In finding Mr. Gutierrez's subjective complaints not credible, the Board stated: "He appears to only complain of these difficulties during VA examinations or when his back and foot bother him." R. at 14. However, the Board then states: "In evaluations of the veteran's service-connected foot disorder, the veteran makes little reference to the disabilities at issue." *Id.* These are inconsistent findings, and such contradictory analysis undermines the reasoning of the Board's decision. The Board, however, determined that Mr. Gutierrez's lack of complaints regarding his joint and muscle pain, fatigue, dizziness, and loss of memory and concentration during VA medical examinations for his service-connected foot disorder was evidence against his claim. R. at 14. The Board failed to discuss adequately this evidence of record *in support* of his claim. Accordingly, the Board's decision contains flawed reasoning and lacks an adequate statement of reasons or bases.

B. Competency of Lay Persons to Provide Evidence of Symptoms

The Board found that the lay statements by Mr. Gutierrez's wife, father, and friend, were "neither competent nor probative of the issues in question." R. at 16. The Board stated:

> The Court has made clear that a lay party is not competent to provide probative evidence as to matters requiring expertise derived from specialized medical knowledge, skill, training, or education. *Espiritu v. Derwinski*, 2 Vet.App. 492, 494-95 (1994). Consequently, the veteran's lay medical assertions to the effect that he has certain subjective disabilities and that these disabilities are related to his Persian Gulf service is neither competent nor probative of the issues in question. While the veteran is competent to testify regarding events that are alleged to have occurred, he is not competent to diagnose himself with disabilities and then diagnose the etiology of these alleged disabilities.

R. at 16. For purposes of evaluating his claim under the presumption statute and regulation, Mr. Gutierrez, as well as his wife, father, and friend, are competent to testify because his alleged symptoms of Persian Gulf War illness are capable of lay observation. *See Caluza*, *supra* (holding that where determinative issue does not require medical expertise, lay evidence alone suffices); *see also Layno v. Brown*, 6 Vet.App. 465, 469-70 (1994) (lay evidence is competent to establish features or symptoms of injury or illness). Contrary to the Board's finding that Mr. Gutierrez's wife "failed to note many of his alleged disorders" (R. at 14), Mrs. Gutierrez did describe her observations of her husband's symptoms (*see* R. at 150). She reported that she had observed a "decline in his general health" and stated that "he doesn't seem to have as much energy, tires quickly, complains of aches and pains throughout his body, and seems to forget information quickly." *Id.* The Board did not address this objective description when making its credibility conclusions. Indeed, those facts directly contradict the Board's finding regarding his credibility. Mrs. Gutierrez provided evidence of symptoms capable of lay observation. Accordingly, the Board's failure to address this correctly leaves its statement of reasons or bases inadequate. *Gilbert*, 1 Vet.App. at 57.

### C. Erroneous Application of Standard for Establishing Service Connection for Gulf War Syndrome

Under § 3.317, Mr. Gutierrez's claimed symptoms "by history, physical examination, and laboratory tests cannot be related to a known clinical diagnosis." 38 C.F.R. § 3.317(a)(1)(ii). In its decision, the Board stated:

> Rather than supporting the veteran's claim, the medical evidence obtained due to his treatment fails to support [his] case. Laboratory tests and studies have been essentially normal and the medical evidence cited by the veteran during his hearing before the Board fails to indicate an undiagnosed illness manifested by joint and muscle

11

pain, fatigue, dizziness, decreased vision, memory loss [,] or a loss of concentration.

R. at 15. Indeed, the medical evidence of record shows that Mr. Gutierrez complained of joint and muscle pain, fatigue, dizziness, sleep problems, and loss of concentration, but no medical examiner ever provided a medical etiology for these illnesses. As the Board correctly noted, the record on appeal does not contain evidence that Mr. Gutierrez's alleged symptoms were related to any current diagnosed disabilities or had a known etiology. R. at 1-452. However, his claimed symptoms by history, physical examination, and laboratory tests *cannot* be related to any known clinical diagnosis for compensation to be awarded under section 1117. *See* 38 C.F.R. § 3.317 (a)(1)(ii). Therefore, the Board erred by concluding that the failure of the laboratory tests and studies to diagnose an illness was evidence against Mr. Gutierrez's claim.

Mr. Gutierrez argues that reversal is appropriate; however, reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision. *See Johnson v. Brown*, 9 Vet.App. 7, 10 (1996). Where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is generally the appropriate remedy. *See Falk v. West*, 12 Vet.App. 402 (1999). In this case, the Board has made clearly erroneous findings as to certain facts relevant to the determination of service connection and has provided an inadequate statement of reasons or bases for its decision. *See* 38 U.S.C. § 7104(d)(1). The Court cannot, however, conclude from the evidence before it that the only "permissible view" is a finding of service connection. *See Johnson*, *Allday, Simon*, and *Gilbert*, all *supra*. Thus, the decision will be vacated and the matter remanded. *See Gilbert*, 1 Vet.App. at 57; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) (remand is meant to entail critical examination of justification for decision; Court expects that Board will reexamine evidence of record, seek any other necessary evidence, and issue timely, well-supported decision).

## IV. CONCLUSION

Based upon the forgoing analysis and the record on appeal, the Board's September 12, 2001, decision is VACATED and the matter is REMANDED for further action consistent with this opinion. On remand, the Board must provide an adequate statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record, including

what objective indications are lacking if it determines that Mr. Gutierrez is not suffering from a Persian Gulf War disability manifested to a degree of 10% or more in satisfaction of section 1117. *See* 38 U.S.C. § 7104(d)(1); *see also Allday*, 7 Vet.App. at 527; *Simon*, 2 Vet.App. at 622; *Gilbert, supra*. The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to Mr. Gutierrez. *See Gabrielson, Caluza,* and *Gilbert*, all *supra*. On remand, Mr. Gutierrez is free to present additional evidence and argument, including those arguments raised in his brief to this Court, and the Board must address them. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369 (1999) (per curiam order).