﻿Citation Nr: AXXXXXXXX
Decision Date: 07/31/20 Archive Date: 07/31/20

DOCKET NO. 190731-16065
DATE: July 31, 2020

ORDER

An increased disability rating of 70 percent for posttraumatic stress disorder (PTSD) is granted.

A disability rating in excess of 10 percent for gastroesophageal reflux disease (GERD) is denied prior to December 21, 2017.

An increased 30 percent rating for gastroesophageal reflux disease (GERD) is granted effective December 21, 2017.

Service connection for cataplexy, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, is denied.

Service connection for narcolepsy, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, is denied.

Service connection for a disability manifested as tremors, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, is denied.

VETERAN’S CONTENTIONS

The Veteran contends that his service-connected PTSD is more severe than the rating currently assigned under 38 C.F.R. § 4.130 Diagnostic Code 9411. Specifically, the Veteran contends that the current rating does not adequately account for his suicidal ideation; irritability; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a worklike setting; social withdrawal; and family problems.

The Veteran contends that his service-connected GERD is more severe than the ratings currently assigned under 38 C.F.R. § 4.114 Diagnostic Code 7346. Specifically, the Veteran contends that the current ratings do not adequately account for his painful swallowing, regurgitation, reflux, heartburn, dysphagia, tooth decay, and difficulty sleeping.

FINDINGS OF FACT

1. For the entire period on appeal, the Veteran's PTSD has been productive of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. It is not productive of total social or occupational impairment.

2. The Veteran's GERD was not productive of persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health, prior to December 21, 2017. 

3. The Veteran’s GERD was productive of persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health effective December 21, 2017. It is not productive of symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health.

4. The Veteran experiences daytime hypersomnolence associated with his service-connected sleep apnea. The Veteran does not have a current diagnosis of cataplexy and he has not displayed objective signs and symptoms of an undiagnosed or medically unexplained chronic multisymptom illness during the course of the appeal.

5. The Veteran experiences daytime hypersomnolence associated with his service-connected sleep apnea. The Veteran does not have a current diagnosis of narcolepsy and he has not displayed objective signs and symptoms of an undiagnosed or medically unexplained chronic multisymptom illness during the course of the appeal.

6. The Veteran does not have a current diagnosis of a disability manifested as tremors and he has not displayed objective signs and symptoms of an undiagnosed or medically unexplained chronic multisymptom illness during the course of the appeal.

7. The Veteran's GERD does not present such an exceptional or unusual disability picture that the available schedular evaluations are inadequate.

CONCLUSIONS OF LAW

1. The criteria for a 70 percent disability for PTSD are met. 38 U.S.C. §§ 1155, 5107(b); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.7, 4.10, 4.19, 4.21, 4.126, 4.130, Diagnostic Code 9411.

2. The criteria for a disability rating in excess of 10 percent for GERD prior to December 21, 2017 are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.27, 4.114, Diagnostic Code 7346.

3. The criteria for a 30 percent disability rating for GERD are met effective December 21, 2017. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.27, 4.114, Diagnostic Code 7346.

4. The criteria for service connection for cataplexy, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, are not met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1131, and 1137. 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.317.

5. The criteria for service connection for narcolepsy, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, are not met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1131, and 1137. 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.317.

6. The criteria for service connection for a disability manifested as tremors, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, are not met. 38 U.S.C. §§ 1101, 1110, 1111, 1112, 1113, 1131, and 1137. 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.317.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from June 2009 to June 2013. He filed the claim currently on appeal in April 2017. The Agency of Original Jurisdiction (AOJ) denied the claim in a May 2017 rating decision.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs (VA)'s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework. 

The Veteran selected the Higher-Level Review lane when he submitted his RAMP election form on May 10, 2018. Accordingly, the July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board of Veterans' Appeals (Board) and requested evidence submission reviewed by a Veterans Law Judge. See July 2019 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement). In adjudicating the claims, the Board may consider evidence associated with the record at the time of the July 2018 RAMP rating decision.

1. Entitlement to a disability rating in excess of 30 percent for post-traumatic stress disorder (PTSD)

Disability ratings are determined by applying the rating criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule) and represent the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA compensation as well as the whole recorded history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; see generally Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating is assigned. Id. Additionally, while it is not expected that all cases will show all the findings specified, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. The Board has considered whether separate ratings for different periods of time are warranted based on the facts, which is a practice of assigning ratings that is referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).

When evaluating a mental disorder, the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the individual's capacity for adjustment during periods of remission must be considered. 38 C.F.R. § 4.126 (a). In addition, the evaluation must be based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Id. 

The General Rating Formula for Mental Disorders, which is set forth in 38 C.F.R. § 4.130, provides in pertinent part:

A 30 percent rating is warranted where there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood; anxiety; suspiciousness; panic attacks (weekly or less often); chronic sleep impairment; mild memory loss (such as forgetting names, directions, recent events).

A 50 percent evaluation is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent evaluation is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships.

A 100 percent evaluation is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

Here, throughout the appeal period, the Veteran has been rated at 30 percent for PTSD. A review of the evidence reveals that the Veteran's PTSD is productive of occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, entitling him to a rating of 70 percent disability rating throughout the period on appeal. 38 C.F.R. § 4.130, Diagnostic Code 9411.

With respect to work, in a May 2017 PTSD examination report the examiner indicated that the Veteran’s symptoms related to his PTSD included difficulty in establishing and maintaining effective work and social relationships and difficulty in adapting to stressful circumstances, including work or a worklike setting. In a January 2018 Disability Benefits Questionnaire (DBQ), a clinician indicated that the Veteran’s symptoms related to PTSD included difficulty in establishing and maintaining effective work and social relationships and difficulty adapting to stressful circumstances, including work or a work like setting. Based on the evidence, the Veteran would likely have difficulty adapting to a full-time work-like setting and his PTSD is thus productive of deficiencies in the area of work.

With respect to family, during the May 2017 examination, the Veteran reported that he is very close to his mother and brother. In the January 2018 DBQ, the clinician noted that the Veteran reported a good relationship with his mother and brother and a fair relationship with his children but his relationship with his wife was not good. The Veteran and his wife were in the midst of a divorce. Based on the evidence, the Veteran has difficulty with his family and his PTSD is thus productive of deficiencies in the area of family.

In the area of judgment, the May 2017 VA examiner noted irritable behavior and angry outbursts (with little or no provocation) typically expressed as verbal or physical aggression toward people or objects. In the January 2018 DBQ, the clinician noted impaired impulse control, such as unprovoked irritability with periods of violence. Based on the evidence, the Veteran has difficulty with judgment and his PTSD is thus productive of deficiencies in the area of judgment.

In the area of thinking, the May 2017 VA examiner noted problems with concentration. In the January 2018 DBQ, the clinician noted suicidal ideation; recurrent and distressing recollections of the event, including images, thoughts, or perceptions; mild memory loss, such as forgetting names, directions, or recent events; and impairment of short and long term memory, for example, retention of only highly learned material, while forgetting to complete tasks. Based on the evidence, the Veteran has difficulty with his thought processes and his PTSD is thus productive of deficiencies in the area of thinking.

In the area of mood, the May 2017 VA examiner noted persistent negative emotional state, markedly diminished interest or participation in significant activities, feelings of detachment or estrangement from others, persistent inability to experience positive emotions, irritable behavior and angry outbursts (with little or not provocation) typically expressed as verbal or physical aggression toward people or objects, depressed mood, anxiety, and disturbances of motivation and mood. In the January 2018 DBQ, the clinician noted irritability or outbursts of anger; depressed mood; anxiety; disturbances of motivation and mood; and impaired impulse control such as unprovoked irritability with periods of violence. Based on the evidence, the Veteran has difficulty with his mood and his PTSD is thus productive of deficiencies in the area of mood.

After careful review of the evidence, the Board finds that the Veteran's PTSD symptoms are productive of occupational and social impairment with deficiencies in most areas. As described above, the Veteran experiences deficiencies in work, family, judgment, thinking, and mood. Accordingly, the Board finds that the preponderance of evidence demonstrates that the disability due to the Veteran's PTSD has approximated the schedular criteria for a disability rating of 70 percent. In so finding, the Board looked to the frequency, severity, and duration of the Veteran's impairment, and not transient symptoms, to assess his disability picture. See Vazquez-Claudio, 713 F.3d at 117 (Fed. Cir. 2013).

The evidence of record does not, however, support a rating of 100 percent (the only higher disability evaluation available). VA and private clinicians have not noted, and the Veteran has not reported gross impairment in thought processes or communication, persistent hallucinations and delusions, grossly inappropriate behavior, intermittent inability to perform the activities of daily living, or any of the other markers of total occupational and social impairment due to PTSD. As discussed above, the Veteran reported good relationships with his mother and brother, demonstrating that although he experiences impairment in the area of relationships, he is not totally socially impaired. As a finding a both total social and occupational impairment is required for the award of a 100 percent rating, the Board finds that a rating in excess of 70 percent is not warranted.

2. Entitlement to a disability rating in excess of 10 percent for gastroesophageal reflux disease (GERD)

Disability ratings are determined by applying the rating criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule) and represent the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10.

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA compensation as well as the whole recorded history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; see generally Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria for that rating. 38 C.F.R. § 4.7. Otherwise, the lower rating is assigned. Id. Additionally, while it is not expected that all cases will show all the findings specified, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. The Board has considered whether separate ratings for different periods of time are warranted based on the facts, which is a practice of assigning ratings that is referred to as "staging the ratings." See Fenderson v. West, 12 Vet. App. 119 (1999).

The current disability rating of 10 percent was assigned pursuant to 38 C.F.R. § 4.114, Diagnostic Code 7346. Diagnostic Code 7346 refers to hiatal hernia. GERD is not listed in the rating schedule. In this case, the Board finds the use of Diagnostic Code 7346 to be appropriate as the Veteran's GERD symptoms are captured by those listed under Diagnostic Code 7346.

Pursuant to Diagnostic Code 7346, a maximum 60 percent rating is assigned for symptoms of pain, vomiting, material weight loss, and hematemesis; or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. Comparatively, a 30 percent rating is assigned for persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. And a 10 percent rating is assigned with two or more of the symptoms for the 30 percent evaluation of less severity.

The Board finds that prior to December 21, 2017, there was no evidence of persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health, such that the criteria for a rating in excess of 10 percent are met. The Board finds that effective December 21, 2017 there was evidence of persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health, such that the criteria for a rating of 30 percent are met. For these reasons, the Board assigns a 30 percent rating effective December 21, 2017 but cannot assign a disability rating in excess of 10 percent pursuant to Diagnostic Code 7346 prior to December 21, 2017.

In this regard, the evidence of record includes a May 2017 esophageal conditions examination report in which the examiner noted that the Veteran's signs or symptoms due to GERD included symptoms of persistently recurrent epigastric distress, reflux, and regurgitation. The examiner noted that the Veteran also reported reflux and heart burn.

The evidence of record also includes a July 2017 esophageal conditions examination report in which the examiner noted the signs or symptoms due to GERD included persistently recurrent epigastric distress, reflux, regurgitation, arm pain, sleep disturbance caused by esophageal reflux, and nausea. The examiner noted that the Veteran reported feeling nauseous all of the time, reflux, heartburn, and the sensation of food coming up into his throat.

The Veteran submitted a December 2017 private opinion from GU that his GERD symptomatology most closely aligns with a 30 percent rating evaluation. GU reasoned that the Veteran reported nausea, chest burning, frequent heartburn, acid reflux, and regurgitation daily. He was prescribed medications to treat the symptoms of his GERD to include Omeprazole and he uses over the counter medication 3 to 4 times per week to help control severe heartburn; and even with medication the heartburn symptoms return soon after he uses medication. GU further reasoned that he has to avoid certain foods, especially spicy and acidic type foods, which all worsen his symptoms; he cannot eat late in the day or eat large meals or else he regurgitates and his throat burns from the stomach acid coming back into his throat; and he sleeps with multiple pillows propping him up at night to help prevent regurgitation and choking from the food that comes back up into his throat. Additionally, his reflux and regurgitation cause other associated health problems including sore throat in the morning from stomach acid and his dentist has said that the stomach acid due to reflux is affecting his teeth. His GERD is having a profound effect on his health in that it causes dietary limitations, painful swallowing, and sleep disturbance.

The Veteran's private and VA medical records are void of any indication that the Veteran's GERD symptoms met the criteria for a higher 30 percent prior to December 21, 2017 or a higher 60 percent rating effective December 21, 2017.

As the clinical and lay evidence is absent findings consistent with the criteria for a higher 30 percent rating prior to December 21, 2017, the Board finds that the preponderance of the evidence is against assigning a disability rating in excess of 10 percent pursuant to Diagnostic Code 7346 prior to December 21, 2017. As such, a disability rating in excess of 10 percent for GERD prior to December 21, 2017 is denied. On the other hand, the clinical and lay evidence is consistent with the criteria for a higher 30 percent rating effective December 21, 2017, therefore, the Board assigns a disability rating of 30 percent pursuant to Diagnostic Code 7346 effective December 21, 2017.

The Board has considered whether the schedular evaluation is inadequate, thus requiring referral of the case to the Under Secretary for Benefits or Director of Compensation and Pension Service for consideration of an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability. 38 C.F.R. § 3.321(b)(1).

An extraschedular evaluation is for consideration where a service-connected disability presents an exceptional or unusual disability picture. An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of the disability. Thun v. Peake, 22 Vet. App. 111(2008). If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Id. When either of those elements has been satisfied, the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular rating is adequate, and referral is not required. Id.; 38 C.F.R. § 3.321 (b)(1).

The Board has considered the evidence of record, including VA treatment records, private treatment records, VA examination reports, and the Veteran's lay statements, to assess his GERD and associated manifestations. The first part of the three-part test, outlined in Thun, requires the Board to consider whether the evidence presents such an exceptional disability picture that the available schedular rating for that disability is not adequate. Here, the Board finds that comparison of the Veteran's GERD disability and associated functional impairment does not show that the rating criteria are inadequate to describe his disability picture. The evidence of record documents that additional signs and symptoms related to the Veteran’s GERD include sleep disturbance and tooth decay. Diagnostic Code 7346 does not enumerate these specific symptoms. Nonetheless, the schedular criteria for a 30 percent rating contemplate symptoms productive of "considerable impairment of health." In other words, the schedular criteria contemplate impairment beyond the symptoms of GERD, but which is nevertheless caused by it or its symptoms. This is precisely the kind of impairment presented by the Veteran's sleep disturbance and tooth decay, and in evaluating his disability under the schedular criteria, the Board has taken it into consideration.

Therefore, the Board finds that the Veteran's impairment due to his GERD, to include his sleep disturbance and tooth decay, comprises a disability picture specifically and adequately contemplated by the schedular rating criteria. Accordingly, the threshold step of the Thun analysis has not been satisfied, and referral of this issue for consideration of an extraschedular analysis is not warranted.

3. Entitlement to service connection for cataplexy, entitlement to service connection for narcolepsy, and entitlement to service connection for a disability manifested as tremors

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009); cf. Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)).

Pursuant to 38 C.F.R. § 3.303(b) when a chronic condition is present, a claimant may establish the second and third elements of service connection by demonstrating continuity of symptomatology. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Certain chronic diseases also may be presumptively service connected if they become manifest to a degree of 10 percent or more within one year of leaving qualifying military service. 38 C.F.R. §§ 3.307 (a)(3), 3.309(a).

The Veteran served in the Southwest Asia Theater of Operations during the Persian Gulf War, on or after August 2, 1990. 38 U.S.C. § 1110. Service connection may also be warranted for a Persian Gulf Veteran who exhibits objective indications of a qualifying chronic disability that became manifest during active military, naval or air service in the Southwest Asia Theater of operations during the Persian Gulf War, or to a degree of 10 percent or more prior to December 31, 2021. 38 U.S.C. § 1117; 38 C.F.R. § 3.317.

For purposes of section 3.317, there are three types of qualifying chronic disabilities: (1) an undiagnosed illness; (2) a medically unexplained chronic multi-symptom illness (such as chronic fatigue syndrome, fibromyalgia, or a functional gastrointestinal disorder); and (3) a diagnosed illness that the Secretary determines in regulations prescribed under 38 U.S.C. § 1117 (d) warrants a presumption of service connection. 38 C.F.R. § 3.317 (a)(2). In claims based on undiagnosed illness, unlike those for "direct service connection," there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Notably, laypersons are competent to report objective signs of illness. Id.

Objective indications of a chronic disability include both "signs," in the medical sense, of objective evidence perceptible to an examining physician, and other, non-medical indicators that are capable of independent verification. Disabilities that have existed for six months or more and disabilities that exhibit intermittent episodes of improvement and worsening over a six-month period will be considered chronic. The six-month period of chronicity will be measured from the earliest date on which the pertinent evidence establishes that the signs or symptoms of the disability first became manifest. A disability referred to in this section shall be considered service-connected for the purposes of all laws in the United States. 38 C.F.R. § 3.317 (a)(2), (5).

The Board notes that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C. §§ 1110, 1131. In the absence of proof of present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); Degmetich v. Brown, 104 F.3d 1328 (1997); Wamhoff v. Brown, 8 Vet. App. 517, 521 (1996).

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical evidence. VA must also consider all favorable lay evidence of record. See 38 U.S.C. § 5107 (b); see also Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (a Veteran is competent to report on that of which he or she has actually observed and is within the realm of his or her personal knowledge).

The threshold question that must be addressed in this case is whether the Veteran has current diagnoses of an undiagnosed illness, medically unexplained chronic multisymptom illness, cataplexy, narcolepsy, and/or a disability manifested as tremors. After a review of the evidence of record, the Board finds that the preponderance of the evidence establishes that the Veteran has not been diagnosed during the course of the appeal with an undiagnosed illness, medically unexplained chronic multisymptom illness, cataplexy, narcolepsy, or a disability manifested as tremors. 38 C.F.R. §§ 3.303, 3.317(a)(2), 4.88a. As such, service connection must be denied.

Service treatment records (STRs) are absent complaints of or treatment for cataplexy, narcolepsy, and/or tremors. Post-service treatment records do not document diagnoses of cataplexy, narcolepsy, and/or a disability manifested by tremors. During the appeal period, the Veteran was afforded VA examinations for cataplexy, narcolepsy, tremors, and undiagnosed illness/medically unexplained chronic multi-symptom illness. During May 2017 and August 2017 VA Gulf War examinations, the examiners indicated that the Veteran did not have any diagnosed illnesses for which no etiology was established or signs or symptoms that may represent an undiagnosed illness or diagnosed medically unexplained chronic multisymptom illness.

The Veteran was afforded a VA narcolepsy examination in May 2017 during which the examiner noted that the Veteran reported daytime drowsiness, falling asleep easily at the computer, watching tv/movies, and sitting still. The examiner opined that there was no evidence to suggest/support that the Veteran had a current diagnosis of narcolepsy or a current diagnosis of cataplexy. The examiner further opined that the Veteran’s daytime drowsiness may be due to limited or poor night sleep, accompanied by napping during the day. The examiner reasoned that the Veteran reported that he could only sleep at night in 3 to 4-hour intervals and felt tired during the day because he does not get enough sleep at night. Consistent with the May 2017 VA examiner opinion, a December 2017 clinician noted symptoms related to the Veteran’s service-connected sleep apnea included daytime fatigue.

The Veteran was afforded a VA Central Nervous System and Neuromuscular Disease examination in February 2014 during which the examiner noted that the Veteran reported anger and excitement causing him to shake out of control. The examiner opined that there was no diagnosis because there was no pathology to render a diagnosis.

In the absence of evidence of a current disability for which service connection may be granted, there can be no grant of service connection under the law. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Service connection for cataplexy, service connection for narcolepsy, and service connection for a disability manifested as tremors is denied.

Although the Veteran has asserted that he has cataplexy, narcolepsy, tremors, and/or an undiagnosed illness/medically unexplained chronic multi-symptom illness due to service, the Board notes that he is not competent to provide evidence pertaining to the diagnosis and etiology of a complex medical condition. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Davidson, 581 F.3d at 1316. Whether the Veteran has a disability and whether the condition is related to his period of active service are complex questions that are not answerable by personal observation alone or by the application of knowledge within the realm of a lay person. See Layno, 6 Vet. App. at 469-70; see also Jandreau, 492 F.3d at n.4.

 

 

S.C. Krembs

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Smith-Jennings, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.